UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

WESCO, INC., WESCO, INC.
CAFETERIA PLAN AND EMPLOYEE
BENEFIT PLAN, FRANKENMUTH
BAVARIAN INN, INC.,
FRANKENMUTH BAVARIAN INN, INC.
EMPLOYEE HEALTH BENEFIT PLAN &
TRUST, OPUS PACKAGING GROUP
INC., and OPUS PACKAGING GROUP
HEALTH INSURANCE PLAN, on behalf
of themselves and a class of all others
similarly situated,

      Plaintiffs,

v.

BLUE CROSS BLUE SHIELD OF MICHIGAN,

      Defendant.

Case No. 1:26-cv-00895

Hon. Robert J. Jonker

Magistrate Judge: Ray Kent

---

**<u>PLAINTIFFS' RESPONSE TO DEFENDANT'S</u>**
**<u>MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT</u>**
**<u>FOR FAILURE TO STATE A CLAIM</u>**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES............................................................................................... ii

CONCISE STATEMENT OF THE ISSUES PRESENTED........................................................ iii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................................................. iv

I. INTRODUCTION .................................................................................................1

II. MATERIAL FACTUAL ALLEGATIONS................................................................2

    A. BCBSM Functioned as an ERISA Fiduciary Relative to the SSP.................2

    B. BCBSM Routinely Overpaid Claims on Behalf of the Plans. ......................3

    C. BCBSM Monetized its Own Errors Through the SSP. ................................3

    D. BCBSM Misappropriated the Plans' Assets. ............................................4

    E. BCBSM Concealed Its Misconduct and Withheld Critical Data...............4

    F. BCBSM's Misconduct Harmed the Plans. .............................................5

    G. Plaintiffs Bring ERISA Claims on Behalf of the Plans. ..............................5

III. ARGUMENT.......................................................................................................5

    A. Governing Legal Standards. ..................................................................5

    B. Plaintiffs' Claims are Timely. ................................................................6

        1. BCBSM's motion on the pleadings is an improper vehicle to address limitations issues....................................................................6

        2. Plaintiffs' claims are timely under § 1113(2).....................................8

        3. BCBSM's ASCs and Schedule As don't establish Plaintiffs' "actual knowledge" of BCBSM's self-dealing through SSP fees. ........................10

        4. BCBSM concealed its self-dealing from Plaintiffs under § 1113(2).........12

        5. Plaintiffs' claims are timely under § 1113(1)...........................................13

    C. BCBSM Breached Its Fiduciary Duties and Committed Prohibited Transactions by Collecting the SSP Fees. .....................................................14

        1. Rule 8, not Rule 9(b), applies. ...................................................14

2.      Plaintiffs' FAC sufficiently alleges BCBSM's self-dealing and fiduciary breaches. ................................................................15

D.      WESCO'S ERISA CLAIMS, BROUGHT ON BEHALF OF ITS PLAN AND BELONGING TO ITS PLAN, HAVE NOT BEEN RELEASED. ........................................20

IV.     CONCLUSION................................................................................................24

**INDEX OF AUTHORITIES**

**Cases**

*Acosta v. City Nat'l Corp.*,
    922 F.3d 880, 885-86 (9th Cir. 2019) ....................................................................... 19, 21

*Arnold v. Paredes*,
    No. 3:23-cv-00545, 2024 WL 356751, at *7 (M.D. Tenn. Jan. 31, 2024) ...................... 27

*Ashcroft v. Iqbal*,
    556 U.S. 662, 678 (2009) ................................................................................................. 6

*Barboza v. California Asso'n of Professional Firefighters*,
    799 F.3d 1257, 1269 (9th Cir. 2015) ................................................................. 19, 20, 21

*Brock v. Hendershott*,
    840 F.2d 339, 341 (6th Cir. 1988) .................................................................................. 18

*Cataldo v. U.S. Steel Corp.*,
    676 F.3d 542, 547 (6th Cir. 2012) ................................................................................ 7, 8

*Chao v. Hall Holding Co.*,
    285 F.3d 415, 442, n.12 (6th Cir. 2002) .......................................................................... 5

*Comau LLC v. BCBSM*,
    No. 19-cv-12623, 2020 WL 7024683, at *9 (E.D. Mich., Nov. 30, 2020) ........................ 7

*Computer & Eng'g Servs., Inc. v. BCBSM*,
    No. 12-15611, 2013 WL 1976234, at *4-5 (E.D. Mich. May 13, 2013) ............................ 8

*Cunningham v. Cornell Univ.*,
    604 U.S. –, 145 S. Ct. 1020, 1027 (2025) ............................................................... passim

*El-Hallani v. Huntington Nat'l Bank*,
    623 F. App'x 730, 735 (6th Cir. 2015) ............................................................................. 6

*Essroc Cement Corp. v. CPRIN, Inc.*,
    No. 1:08-CV-974, 2009 WL 2033052, at *23 (W.D. Mich. July 9, 2009) ...................... 17

*Fleming v. Kellogg Co.*,
    No. 23-1966, 2024 WL 4534677, at *8 (6th Cir. Oct. 21, 2024) .................................... 29

*Fleming v. U.S. Postal Serv. AMF O'Hare*,
    27 F.3d 259, 261 (7th Cir. 1994) ................................................................................... 25

*Grand Traverse Band of Ottawa & Chippewa Indians v. BCBSM*,
    No. 24-1367, 2025 WL 2104569, (6th Cir. July 28, 2025) ............................................. 11

*Hawkins v. Cintas*,
32 F.4th 625, 627 (6th Cir. 2022) ..................................................................... 27

*Hi-Lex Controls, Inc. v. BCBSM*,
751 F.3d 740, 748 (6th Cir. 2014) ................................................. 14, 19, 20, 21

*Hi-Lex Controls, Inc. v. BCBSM*,
No. 11-12557, 2013 WL 2285453, at *24 (E.D. Mich. May 23, 2013) ..................... 13, 14

*In re Trans-Indus., Inc.*,
538 B.R. 323, 354 (Bankr. E.D. Mich. 2015) ..................................................... 7

*Keene Grp., Inc. v. City of Cincinnati*,
998 F.3d 306, 310 (6th Cir. 2021) ..................................................................... 6

*Lockheed Corp. v. Spink*,
517 U.S. 882, 888 (1996) ................................................................................. 17

*Lutz v. Chesapeake Appalachia, L.L.C.*,
717 F.3d 459, 464 (6th Cir. 2013) ..................................................................... 7

*Martin v. Consultants & Administrators, Inc.*,
966 F.2d 1078, 1087–88 (7th Cir. 1992) ........................................................... 15

*McGinnes v. FirstGroup Am., Inc.*,
No. 1:18-CV-326, 2021 WL 1056789, at *7 (S.D. Ohio Mar. 18, 2021) ..................... 9

*Metro. Edison Co. v. NLRB*,
460 U.S. 693, 708 (1983) ................................................................................. 25

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614, 637 n.19 (1985) ......................................................................... 28

*NYSA–ILA Medical & Clinical Services Fund v. Catucci*,
60 F. Supp. 2d 194, 199–200 (S.D.N.Y. 1999) ................................................. 15

*Parker v. Tenneco, Inc.*,
114 F.4th 786, 798-802 (6th Cir. 2024) ............................................................ 29

*Patelco Credit Union v. Sahni*,
262 F.3d 897 (9th Cir. 2001) ..................................................................... 19, 21

*Pipefitters Local 636 Ins. Fund v. BCBSM*,
722 F.3d 861, 868 (6th Cir. 2013) ............................................................. 19, 21

*Rembisz v. Lew*,
590 F. App'x 501, 504 (6th Cir. 2014) ............................................................... 9

*Rosenbaum v. Davis Iron Works*,
871 F.2d 1088, 1989 WL 36897, at *5 (6th Cir. 1989) ..................................................... 28

*Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*,
711 F.3d 675, 685 (6th Cir. 2013) ................................................................................ 26

*Schuman v. Microchip Technology Incorporated*,
139 F.4th 1045, 1052 (9th Cir. 2025) ........................................................................... 24

*Shirk v. Fifth Third Bancorp*,
No. 05-CV-049, 2008 WL 4425535, at *3 (S.D. Ohio Sept. 30, 2008) ........................... 27

*Sweeney v. Nationwide Mut. Ins. Co.*,
No. 2:20-CV-1569, 2024 WL 1340262, at *5 (S.D. Ohio Mar. 28, 2024)....................... 26

*Taylor v. Visteon Corp.*,
149 F. App'x 422, 427 (6th Cir. 2005)..................................................................... 25, 28

*Tibble v. Edison Int'l*,
575 U.S. 523, 530 (2015)............................................................................................. 15

*Wright v. Heyne*,
349 F.3d 321, 331 (6th Cir. 2003) ............................................................................... 10

## <u>Constitutional Provisions</u>

29 U.S.C. § 1106(a)(1)(C) ................................................................................................ 15

29 U.S.C. § 1106(b) ......................................................................................................... 16

29 U.S.C. § 1106(b)(1) ............................................................................................... 16, 17

29 U.S.C. § 1108............................................................................................................. 16

29 U.S.C. § 1108(b) ......................................................................................................... 16

29 U.S.C. § 1110(a) ......................................................................................................... 23

## CONCISE STATEMENT OF THE ISSUES PRESENTED

1.     Whether Plaintiffs' ERISA claims for prohibited transactions and breach-of-fiduciary-duty are timely under 29 U.S.C. § 1113 where: (A) Plaintiffs' claims challenge BCBSM's ongoing charging and collection of fees from plan assets under its "shared savings" program ("SSP"); (B) Plaintiffs first learned about BCBSM's self-dealing and fiduciary breaches in 2025; and (C) BCBSM concealed its self-dealing and fiduciary breaches from Plaintiffs.

Answer: Yes.


2.     Whether Plaintiffs' First Amended Complaint states plausible claims under ERISA for breaches of fiduciary duty and prohibited transactions under 29 U.S.C. § 1106 related to BCBSM's charging and collecting fees from plan assets under its SSP when the Sixth Circuit recently held, in a case challenging BCBSM's SSP, that the plaintiff stated a plausible claim for self-dealing and breach of fiduciary duty under ERISA and Plaintiffs' SSP claim rests on similar allegations.

Answer: Yes.


3.     Whether Wesco's claims have been released where: (A) there is no actual release "agreement"; (B) there is no consideration for BCBSM's claimed "release"; (C) Plaintiffs' statutory claims under ERISA are outside the scope of BCBSM's claimed "release" language; (D) the language BCBSM relies on for its "release" argument is unenforceable vis-à-vis Plaintiffs' claims, which are derivative, statutory claims brought under ERISA belonging to the Wesco Plan, not Wesco individually; and (E) BCBSM's claimed "release" agreement, even if it existed and was

enforceable, would be facially invalid, in violation of ERISA's exculpatory provision, public policy, and the "effective vindication" doctrine.

Answer: Yes.

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

29 U.S.C. § 1113

29 U.S.C. § 1106

Fed. R. Civ. P. 12(b)(6)

*Cunningham v. Cornell Univ.*, 604 U.S. 693 (2025)

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178 (2020)

*Tiara Yachts, Inc. v. BCBSM*, 138 F.4th 457 (6th Cir. 2025)

*Fleming v. Kellogg Co.*, No. 23-1966, 2024 WL 4534677, (6th Cir. Oct. 21, 2024)

*Parker v. Tenneco, Inc.*, 114 F.4th 786 (6th Cir. 2024)

*Hawkins v. Cintas*, 32 F.4th 625 (6th Cir. 2022)

*Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675 (6th Cir. 2013)

*Rosenbaum v. Davis Iron Works*, 871 F.2d 1088, 1989 WL 36897, (6th Cir. 1989)

## I. INTRODUCTION

Defendant Blue Cross Blue Shield of Michigan ("BCBSM") seeks dismissal of well-pleaded ERISA claims by distorting the law, mischaracterizing Plaintiffs' factual allegations, and misrepresenting two dozen unauthenticated documents outside the First Amended Complaint ("FAC"). And it rests on a false premise: that a Rule 12(b)(6) motion can resolve questions of fact, such as what each Plaintiff knew and when, against detailed allegations of ongoing fiduciary misconduct and concealment. BCBSM's motion should be denied.

Plaintiffs' claims are timely under 29 U.S.C. § 1113. BCBSM breached ERISA fiduciary duties by generating overpayments to collect Shared Savings Program ("SSP") fees from Plan assets for its own benefit—self-dealing that continues to this day—and each breach is an independent violation triggering a fresh statute of limitations under the continuing violation doctrine and text of § 1113(1). In claiming Plaintiffs had "actual knowledge" of violations more than three years before filing suit, BCBSM misrepresents the law and the FAC. Under *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178 (2020), "actual knowledge" means a plaintiff knew all material facts constituting the alleged breach. The FAC alleges Plaintiffs first discovered BCBSM's self-dealing in 2025. Besides, the three-year limitations period is not applicable because BCBSM withheld critical claims data, misrepresented the SSP as a "cost-saving" program, and hid overpayments used to justify SSP fees; such omissions and concealment trigger ERISA's six-year statute of limitations under § 1113(2).

Raising limitations issues at the pleadings stage is inappropriate when a fact-intensive inquiry is needed. Courts, including this Court recently in *Tiara Yachts, Inc. v. BCBSM*, have

rejected early attempts by BCBSM to raise limitations arguments. BCBSM's pointing to dozens of exhibits outside the FAC underscores the factual disputes that preclude dismissal at this stage.[1]

The FAC more than plausibly alleges BCBSM breached its fiduciary duties and engaged in *per se* prohibited transactions under ERISA § 406(b) by paying itself SSP fees from Plan assets. *Tiara Yachts, Inc. v. BCBSM*, 138 F.4th 457 (6th Cir. 2025), is on point: BCBSM's control over what claims are paid and how much is paid means its further control over what fees it collects from Plan assets constitutes self-dealing that ERISA forbids. All of this is detailed in the FAC, which the Sixth Circuit has held is subject to Rule 8, not Rule 9(b)'s heightened pleading standard.

BCBSM's release argument fares no better. There was no agreement, no consideration, and not even an effort to release future ERISA claims. Even if there had been a release, it would be unenforceable because it purports to waive rights belonging to Wesco individually, not the Plan. Further, ERISA's exculpatory provision prohibits any such future release; ERISA claims are statutory, brought on behalf of plans under § 502(a)(2), and cannot be contractually waived or released.

## II.     MATERIAL FACTUAL ALLEGATIONS

**A.      BCBSM FUNCTIONED AS AN ERISA FIDUCIARY RELATIVE TO THE SSP.**

BCBSM is an ERISA fiduciary relative to the SSP because it exercised discretionary authority over the Plans' assets and its own compensation. "BCBSM 'held plan assets' of each self-funded plan" in a bank account under its control. FAC, at ¶65, (ECF No. 23, PageID.262). It "had complete discretionary control and authority over [the] bank account and the Class

---

[1] BCBSM's 24 exhibits should be excluded from consideration entirely by this Court, or, alternatively, if the Court considers them, full discovery should be afforded to Plaintiffs first before this Court decides BCBSM's motion as a summary judgment motion. BCBSM should not be permitted to cherry-pick provisions from its own documents while withholding the full scope of documentation and fee data from Plaintiffs.

Representatives' Plan assets . . . including . . . discretionary check-writing authority over that account." *Id.*, ¶63 (PageID.262). "BCBSM also used such authority and control to pay itself from the bank account, in its discretion." *Id.*, ¶64 (PageID.262). Thus, "BCBSM exercised discretion in setting its compensation under the SSP" and was an ERISA fiduciary relative to the SSP. *Id.*, ¶70 (PageID.263); *Tiara Yachts*, 138 F.4th at 468-470.

**B.      BCBSM ROUTINELY OVERPAID CLAIMS ON BEHALF OF THE PLANS.**

BCBSM's claims-processing systems routinely generated improper payments on behalf of the Plans. BCBSM knowingly paid "duplicate bills, unbundled claims, upcoded claims . . . claims for medically unlikely services, and claims that do not adhere to standard payment guidelines." FAC, at ¶101, (PageID.271). One of its own employees "sounded the alarm on an internal BCBSM system . . . causing certain BCBSM self-funded customers to overpay on medical claims by hundreds of thousands of dollars." *Id.*, ¶96 (PageID.270). A separate audit "identified over $9 million in claims improperly processed and paid by BCBSM." *Id.*, ¶100 (PageID.271). These errors "consistently result[ed] in improper payments of claims." *Id.*, ¶103 (PageID.272).

**C.      BCBSM MONETIZED ITS OWN ERRORS THROUGH THE SSP.**

Rather than fix its claims processing errors, BCBSM monetized them. BCBSM "unilaterally enrolled all self-funded customers . . . into a complex and convoluted 'Shared Savings Program' ('SSP')." *Id.*, ¶4 (PageID.250). Under that program, BCBSM "imposes fees of up to 30% of what it purportedly 'recovers' or 'prevents' from being improperly paid." *Id.*, ¶7 (PageID.251). Consider the perverse incentive: "each 'error' provides an opportunity for BCBSM to collect additional fees from the very plans it is supposed to protect." *Id.*, ¶7 (PageID.251). Plaintiffs pleaded the mechanics of that scheme with an illustrative example, demonstrating

BCBSM first "slide[s] [an inflated bill] through its first-pass review," then "collects a 30% fee …

for 'catching' its own error." *Id.*, ¶120 & graphic (PageID.275).

In other words, through the SSP BCBSM created a structural conflict of interest. BCBSM

controls both the "front end" (claims processing) and the "back end" (SSP fee collection). *Id.*,

¶¶117-118 (PageID.275). The more errors it makes—or allows—on the front end, the more fees

it collects on the back end. *See id.* This is a systemic, structural design intended to enrich BCBSM

at the expense of plan assets. According to BCBSM's own internal documents, it created the SSP

to "(1) drive sustainable margin improvement for itself; (2) increase underwriting gain for itself;

and (3) generate shared savings revenue for itself." *Id.*, ¶122 (PageID.276).

**D.      BCBSM MISAPPROPRIATED THE PLANS' ASSETS.**

Plaintiffs' FAC alleges specific instances of self-dealing by BCBSM. As to Wesco:

BCBSM "collected a $22,576 fee … $4,415 fee … $1,516 fee … [and] $7,274 fee" from Wesco

Plan assets, each deceptively labeled "BCBSM PAYMENT INTEGRITY SHARE/ADMIN

COMP." *Id.*, ¶129 (PageID.278-279). As to Opus: "in 2024, BCBSM unilaterally charged and

collected $41,905 in SSP fees." *Id.*, ¶130-131 (PageID.279). Plaintiffs seek "disgorgement of all

SSP fees collected by BCBSM." *Id.*, Prayer for Relief ¶g (PageID.295).

**E.      BCBSM CONCEALED ITS MISCONDUCT AND WITHHELD CRITICAL DATA.**

"BCBSM regularly impedes its self-funded customers … from being able to fully evaluate

and review their claims data by rejecting their requests." *Id.*, ¶135, (PageID.280). Despite

"repeated requests for [Wesco's] claims data … BCBSM has refused to provide" it. *Id.*, ¶136

(PageID.280). BCBSM's "systematic fraud and/or concealment" includes "misrepresenting the

SSP as a 'savings' … program, when it actually is the opposite—a ruse BCBSM uses to fleece its

self-funded customers and waste their plans' assets." *Id.*, ¶137 (PageID.281). Such deception

"resulted in Plaintiffs not understanding how the SSP actually operated and only recently discovering BCBSM's self-dealing." *Id.*, ¶137 (PageID.281-282).

**F.      BCBSM'S MISCONDUCT HARMED THE PLANS.**

Per the FAC, "BCBSM's malfeasance has … resulted in BCBSM improperly pocketing Plaintiffs' Plan assets … as SSP fees, as well as wasting Plan assets via overpayments." *Id.*, ¶145 (PageID.282-283).  Plaintiffs "ha[ve] been damaged because of BCBSM's breaches of fiduciary duty and self-dealing." *Id.*, ¶¶141-144.

**G.      PLAINTIFFS BRING ERISA CLAIMS ON BEHALF OF THE PLANS.**

The FAC alleges BCBSM "dealt with Plaintiffs' assets and any Class members' assets in its own interest and for its own account," *id.*, ¶167 (PageID.288-289), and "fail[ed] to implement and exercise sufficient quality control and oversight of BCBSM's claims processing systems[.]" *Id.*, ¶182 (PageID.292-293).  Each SSP fee is pleaded as a "new and separate per se prohibited activity, regardless of intent, soundness of the transaction, or absence of harm."  *Id.*, ¶173 (PageID.289-290); *see also Chao v. Hall Holding Co.*, 285 F.3d 415, 442, n.12 (6th Cir. 2002). BCBSM's misconduct violated its fiduciary duties "to charge and receive only reasonable fees," "to act prudently … and refrain from self-dealing," and "to disclose and inform."  FAC, ¶91 (ECF No. 23, PageID.266-267).  Plaintiffs seek "to recover the losses suffered," and "to obtain restitution and disgorgement of SSP fees," among other relief.  *Id.*, ¶12 (PageID.251-252); Prayer for Relief, (PageID.294-295).

### III.    ARGUMENT

**A.      GOVERNING LEGAL STANDARDS.**

To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009).  This Court must "construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in its favor, and accept[s] all well-pleaded allegations in the complaint as true."  *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021).

The Sixth Circuit has instructed that at this "early stage of the proceedings," a plaintiff is "not required to set out detailed factual allegations" because "[u]ntil discovery has begun, the plaintiff simply may not have access to all the facts."  *El-Hallani v. Huntington Nat'l Bank*, 623 F. App'x 730, 735 (6th Cir. 2015).  Courts should "take into account economic or logistical circumstances that prevent [Plaintiffs] from obtaining evidence supporting [their] claim[s] and adjust the plausibility threshold appropriately to account for these difficulties."  *Id.*

**B.  PLAINTIFFS' CLAIMS ARE TIMELY.**

Under 29 U.S.C. § 1113, ERISA claims must be filed after the earlier of:

(1) [S]ix years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) [T]hree years after the earliest date on which the plaintiff *had actual knowledge* of the breach or violation[;] *except that in the case of fraud or concealment*, such action may be commenced not later than *six years* after the date of discovery of such breach or violation.

"In the ERISA context, the continuing violation doctrine is used for statute of limitations purposes to analyze when a cause of action accrues."  *In re Trans-Indus., Inc.*, 538 B.R. 323, 354 (Bankr. E.D. Mich. 2015).  Thus, "a new cause of action accrues for each violation where separate violations of the same type, or character, are repeated over time."  *Id.*

**1.  BCBSM's motion on the pleadings is an improper way to address limitations issues.**

BCBSM's statute-of-limitations argument is an affirmative defense on which it bears the burden of proof.  *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013)

("Because the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run." (citation and quotation marks omitted)). As a result, BCBSM's statute-of-limitations argument is generally inappropriate for a motion—like BCBSM's 12(b)(6) motion here—that must be confined to the FAC's allegations. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) ("[A] motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations."). BCBSM's argument should be denied on this basis alone. *See, e.g.*, *Comau LLC v. BCBSM*, No. 19-cv-12623, 2020 WL 7024683, at *9 (E.D. Mich., Nov. 30, 2020) (denying BCBSM's motion to dismiss based on statute of limitations as premature); *Computer & Eng'g Servs., Inc. v. BCBSM*, No. 12-15611, 2013 WL 1976234, at *4-5 (E.D. Mich. May 13, 2013) (same).

Indeed, this Court—on remand in its August 12, 2025, Order in *Tiara Yachts, Inc. v. BCBSM*, Case No. 1:22-cv-603—"**DENIED**" BCBSM's renewed motion to dismiss under Rule 12(b)(6). **Exhibit A**, 8/12/2025 Order. This Court reasoned BCBSM's statute-of-limitations argument regarding BCBSM's SSP is "an affirmative defense that is rarely the subject of a successful 12(b)(6), particularly when from the Plaintiff's perspective there are some fact questions that they believe will be embedded in the question of what knowledge, if any, Tiara Yachts had and when they had it." **Exhibit B**, Transcript of August 11, 2025, R16 Proceedings, at 12:18-24. This Court noted "the better way of handling it is with a fully developed record." *Id.* at 13:13-16. The same analysis and result applies here.

Although "sometimes the allegations in the complaint affirmatively show that the claim is time-barred," *Cataldo*, 676 F.3d at 547, here BCBSM's statute-of-limitations argument (at the Rule 12(b)(6) stage), is not even based on the FAC's well-pleaded allegations. It is instead based on

7

*twenty-four* unauthenticated exhibits, all the while BCBSM ignores the FAC's factual allegations. *See* BCBSM Br., at 12-14 (ECF No. 40, PageID.30-32) (repeatedly citing "Exhibits A-J" and "Exhibits L-W" for its statute-of-limitations argument). That further dooms BCBSM's motion. *See Rembisz v. Lew*, 590 F. App'x 501, 504 (6th Cir. 2014) (statute of limitations challenge can only be "susceptible to resolution" if plaintiff "affirmatively pleads herself out of court."). Worse still, BCBSM relies on fabricated assertions not in the FAC or even its exhibits, as detailed below. *See McGinnes v. FirstGroup Am., Inc.*, No. 1:18-CV-326, 2021 WL 1056789, at \*7 (S.D. Ohio Mar. 18, 2021) (denying motion to dismiss ERISA claims where "what Plaintiffs knew and when they knew it" was "neither before the Court nor appropriate to consider in the context of a Rule 12(b)(6) motion."). For example, BCBSM points to its exhibits outside the FAC as supposedly "disclos[ing] the SSP" to Plaintiffs, BCBSM Br., at 12-13 (ECF No. 40, PageID.30), but the FAC actually alleges BCBSM "misrepresenting the SSP" as a 'savings' and 'cost-containment' program," and hiding overpayments from Plaintiffs used to justify SSP fees. FAC, at ¶137 (ECF No. 23, PageID.281). As another example, BCBSM asserts Plaintiffs "learned about the SSP more than three years before this action was filed," BCBSM Br., at 13 (ECF No. 40, PageID.31), but the FAC alleges Plaintiffs didn't learn about the SSP until 2025. FAC, at ¶¶137, 139 (ECF No. 23, PageID.281-82).

> **2.     Plaintiffs' claims are timely under § 1113(2).**

ERISA's "actual knowledge" requirement begins "when the plaintiff gains 'actual knowledge' *of the breach.*" *Intel Corp.*, 589 U.S. at 181 (emphasis added). The plaintiff must know *all* "*material facts upon which [Plaintiffs'] claims for breach of ERISA fiduciary duties are based*[.]" *Wright v. Heyne*, 349 F.3d 321, 331 (6th Cir. 2003) (emphasis added).

Plaintiffs' ERISA claims are based on BCBSM's ***knowingly self-dealing*** through ***collecting SSP fees.*** FAC, at ¶¶5-7, 9, 111-112, 114-120, 123, 167-169, 182 (PageID.251-252, 274-276, 277, 289, 293) ("BCBSM's collections of SSP fees were prohibited transactions"); *see also id.* at ¶182 (PageID.293) ("BCBSM breached its fiduciary duties [by] . . . [k]nowingly using the Plans' assets and Class Plans' assets to pay itself SSP fees based on BCBSM's own claim errors . . . ."). In *Tiara Yachts*, another ERISA case regarding BCBSM's SSP fees, the Sixth Circuit described the plaintiff's claims this way too: BCBSM "***profited*** from its mismanagement, by implementing a program through which it caught overpayments, clawed them back, and ***kept a portion of those 'savings' for itself.***" *Tiara Yachts*, 138 F.4th at 460-61 (emphasis added). What matters is not when BCBSM "adopted" the SSP (ECF No. 31, PageID.589, 600). That is not the ERISA violation. The violation is BCBSM's ***collection*** of SSP ***fees*** from ***Plans' assets***—self-dealing in violation of ERISA. FAC, at ¶¶5-7, 9, 111-120, 123, 167-169, 182 (PageID.251-252, 274-277, 289, 293).

Plaintiffs did not know BCBSM self-dealt with Plans' assets—manipulating a front-end adjudication to collect an SSP fee on the back end—until 2025. *See id.*, at ¶137 (ECF No. 23, PageID.281) ("Plaintiffs [did] not understand[] how the SSP actually operated and only recently discover[ed] BCBSM's self-dealing and conflicts of interest in collecting SSP fees."); *see also id.* at ¶139 (PageID.281-282) ("BCBSM's misconduct and ongoing breaches of fiduciary duty were incapable of being discovered until recently, when Class Representatives learned about the true nature of BCBSM's SSP and some of the fees BCBSM collected pursuant to its SSP."). Plaintiffs did not discover this earlier due to BCBSM's concealment of its overpayments and self-dealing from Plaintiffs. *Id.* at ¶¶134-139 (PageID.280-282) (describing BCBSM's misrepresentations and concealment to Plaintiffs and "active steps to conceal its collection of SSP fees under the Class

Representatives' (and putative class members') Plans"). Plaintiffs did not know what the providers' true charges were, what BCBSM's payment rates were, how they compared, or what BCBSM kept for itself, and it was therefore impossible for them to know BCBSM was self-dealing in collecting SSP fees—BCBSM's misconduct at issue. *See Id.* ("Despite Wesco's repeated requests for its claims data, which would identify additional BCBSM overpayments and fiduciary breaches, BCBSM has refused to provide Wesco or the Wesco Plan with such claims data.").

No help to BCBSM is *Grand Traverse Band of Ottawa & Chippewa Indians v. BCBSM*, No. 24-1367, 2025 WL 2104569, (6th Cir. July 28, 2025). That case concerned ERISA claims against BCBSM for wasting plan assets by failing to apply Medicare-like rate discounts available to that tribe. *Id.* at \*3. The Sixth Circuit held "the fatal defect appear[ed] on the face of the amended pleading: the Tribe knew by 2009 that it was not receiving MLR," but did not file suit until 2014. *Id.* at \*4-6. None of that is present here. This case concerns BCBSM's *self-dealing* by *collecting SSP fees* off its overpayments to providers from Plan assets, *which it continues doing even today*. Nowhere do Plaintiffs allege they knew about BCBSM's self-dealing in SSP fee collection any earlier than 2025, when Plaintiffs filed suit. *See* FAC, at ¶¶137-138 (ECF No. 23, PageID.281-282). BCBSM's timeliness argument, when Plaintiffs sued the year they learned about BCBSM's self-dealing, is meritless.

3. **BCBSM's ASCs and Schedule As don't establish Plaintiffs' "actual knowledge" of BCBSM's self-dealing through SSP fees.**

BCBSM misconstrues a few sentences in ***its own exhibits, not in the FAC***, to argue the limitations clock started at some unidentified, earlier date(s), without even differentiating among each Plaintiff. BCBSM Br., at 12-14 (ECF No. 40, PageID.30-32). It points to vague language in its ASCs and Schedule As (new agreements executed each year), wherein it represented that, *at some point in the future*, it would "enhance the savings" of (unidentified) plans through the SSP;

10

and *later yet* "retain as administrative compensation" a percentage of recovery or cost avoidance; and *even later still* make "available" an (unidentified) "report" about that (ECF No. 40-10, PageID.150). None of that disclosed a single overpayment or SSP fee. And, critically, none of that says **anything** about what each individual **Plaintiff actually knew** about BCBSM's self-dealing, which is what matters for ERISA's "actual knowledge" requirement. "To meet § 1113(2)'s 'actual knowledge' requirement, however, [*Plaintiffs*] must in fact have become aware of that information," *Intel Corp.*, 589 U.S. at 186-87, which they never were because BCBSM hid its misconduct. Plaintiffs did not know: (1) what providers charged; (2) what BCBSM paid; (3) what BCBSM should have paid; and (4) what BCBSM actually kept as SSP fees—the material facts underlying Plaintiffs' ERISA self-dealing claim. FAC at ¶¶134-139 (ECF No. 23, PageID.280-282). BCBSM's arguments—based solely on its **misrepresentation** of **what it might do later**, without regard to when any individual Plaintiff actually knew of a single SSP fee and BCBSM's self-dealing—conflicts with *Intel Corp.*'s ruling that "disclosure alone" does not meet "§ 1113(2)'s 'actual knowledge' requirement[.]" *Intel Corp.*, 589 U.S. at 186-87 ("§ 1113(2) requires more than evidence of disclosure alone.").

In contrast to BCBSM's inaccurate and misleading "disclosure" argument, the FAC alleges "Plaintiffs [did] not understand[] how the SSP actually operated and only recently discover[ed] BCBSM's self-dealing and conflicts of interest in collecting SSP fees." FAC, at ¶137 (ECF No. 23, PageID.281); *see also id.* at ¶139 (PageID.281-282). BCBSM's attempt to impute knowledge onto Plaintiffs through misrepresentations of what its ASCs and Schedule A documents purportedly say is meritless. *See Intel Corp.*, 589 U.S. at 186-87 ("[Section] 1113(2) requires more than evidence of disclosure alone."); *Hi-Lex Controls, Inc. v. BCBSM*, No. 11-12557, 2013 WL 2285453, at *24 (E.D. Mich. May 23, 2013) ("So-called disclosures made in the 2002 ASC, 1995

11

through 2008 Schedule As, and the renewal packages for 2006 through 2008, did not unambiguously disclose the Disputed Fees. . . . [T]he documents BCBSM relies upon do not clearly set forth the essential facts of the transaction or conduct which constitutes BCBSM's breach of duty.").

Further, BCBSM committed an independent violation of ERISA each time it "charge[d] fees (up to 30%) for the correction of its own 'mistakes'" under the SSP. FAC, ¶123 (ECF No. 23, PageID.277). ERISA's "actual knowledge" limitations period only accrued for any fee on the date a Plaintiff gained actual knowledge of BCBSM's *breach*, which in this case first occurred in 2025. *See id.* at ¶¶137-138 (PageID.281-282); *see also Intel Corp.*, 589 U.S. at 181 (§ 1113(2)'s three-year limitations period "begins when the plaintiff gains 'actual knowledge' of the breach."). BCBSM misstates the law and facts to try to immunize itself for its self-dealing, which continues today. *See id.*

### 4. BCBSM concealed its self-dealing from Plaintiffs under § 1113(2).

Independent of the foregoing, ERISA's "fraud or concealment" limitations period also applies, meaning a six-year statute of limitations runs from the date of discovery of BCBSM's ERISA violations in 2025. *See* 29 U.S.C. § 1113(2). That period applies when, as here, "a fiduciary: (1) breached its duty by making a knowing misrepresentation or omission of a material fact to induce [a plaintiff] to act to his detriment; or (2) engaged in acts to hinder the discovery of a breach of fiduciary duty." *Hi-Lex Controls, Inc. v. BCBSM*, No. 11-12557, 2013 WL 2285453, at *25 (E.D. Mich. May 23, 2013).

BCBSM engaged in fraud or concealment to hide its breaches of fiduciary duties and self-dealing by: "(1) refusing to provide Plaintiffs with their full set of claims data necessary to understand the SSP and fees BCBSM collected pursuant to the SSP; [(2)] concealing its

overpayments upon which SSP fees were based; and (3) misrepresenting the SSP as a 'savings' or 'cost-containment' program, when it actually is the opposite." FAC, at ¶137 (ECF No. 23, PageID.281). These misrepresentations were intentional, resulting in "Plaintiffs not understanding how the SSP actually operated and only recently discovering BCBSM's self-dealing and conflicts of interest in collecting SSP fees." *Id.* Plaintiffs acted with due diligence, repeatedly requesting their claims data (which would have identified BCBSM's overpayments and fiduciary breaches), only to be stonewalled by BCBSM. *Id.* at ¶¶134-136 (PageID.280-281).

Plaintiffs' claims are therefore timely. *See Hi-Lex Controls, Inc. v. BCBSM*, 751 F.3d 740, 748 (6th Cir. 2014) (fraud or concealment exception to ERISA statute of limitations applied where BCBSM misrepresented and omitted material information about its pricing in documents).

**5.      Plaintiffs' claims are timely under § 1113(1).**

Plaintiffs' claims are also timely under ERISA's six-year statute of repose. As discussed above, BCBSM violated a continuing fiduciary duty through repeated self-dealing by collecting SSP fees from Plaintiffs' Plan assets. FAC, at ¶¶1-12, 139, 173 (ECF No. 23, PageID.250-252, 281-282, 290). The FAC identifies specific SSP fees collected from each Plaintiff's plan assets— *e.g.*, $22,576, $4,415, $1,516, and $7,274 from Wesco; $41,905 from Opus in 2024 alone—and alleges continuing violations. FAC at ¶¶129-130, (ECF No. 23, PageID.278).

Under *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015), a fiduciary's ongoing duty means each discrete act of self-dealing triggers a fresh limitations period. *See id.* Each of these fees is a distinct prohibited transaction. *See id.* In this context, where, as here, "the alleged breach of the continuing duty occurred within six years of suit, the claim is timely." *Tibble*, 575 U.S. at 530; *see also NYSA–ILA Medical & Clinical Services Fund v. Catucci*, 60 F. Supp. 2d 194, 199–200 (S.D.N.Y. 1999) (successive inappropriate payments create new cause of action "each time a

fiduciary made an improper payment with Fund assets"). BCBSM's argument that it is absolved of liability while it continues violating ERISA is meritless. *See Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1087–88 (7th Cir. 1992) ("If knowledge of an ERISA violation barred claims based on similar future conduct, this continuing fiduciary duty would be severely weakened, and trustees would be left free to engage in repeated violations, so long as they have once been discovered but not sued.").

### C. BCBSM BREACHED ITS FIDUCIARY DUTIES AND COMMITTED PROHIBITED TRANSACTIONS BY COLLECTING THE SSP FEES.

#### 1. Rule 8, not Rule 9(b), applies.

BCBSM argues Plaintiffs' FAC should "meet the heightened pleading standard applicable under Rule 9(b)." BCBSM Br., at 14 (ECF No. 40, PageID.33). Recently, however, in a published ruling against BCBSM in a parallel ERISA case based on BCBSM's SSP fees, the Sixth Circuit decided "Rule 9(b) does not apply to [plaintiff's] claims about the SSP." *Tiara Yachts*, 138 F.4th at 467-68. The Sixth Circuit reasoned "the elements of common law fraud do not overlap with the elements of an ERISA self-dealing claim." *Id.* at 467 (noting "BCBSM cites no decision from this court applying Rule 9(b) to an ERISA self-dealing claim"). That case made the same allegations about the SSP that Plaintiffs make here: "Tiara Yachts claims BCBSM overpaid providers, failed to correct the claims-processing issues that led to that overpayment, and implemented a system to profit off its own mistakes." *Id.* BCBSM's "heightened pleading standard" argument— contradicting recent Sixth Circuit precedent ***against it*** on that same issue—"falls flat" again. *Id.*

Similarly, the Supreme Court, in *Cunningham v. Cornell Univ.*, 604 U.S. 693, 702 (2025), recently held that "under § 1106(a)(1)(C), plaintiffs need only plausibly allege each of those elements of a prohibited-transaction claim"; no heightened pleading requirements apply. *See Id.*; *see also Id.* at 710 (Alito, J., concurring) ("The upshot is that all that a plaintiff must do in order to

14

file a complaint that will get by a motion to dismiss . . . is to allege that the administrator" "employ[ed] outside firms to provide services[.]").

For those reasons, *all* BCBSM's arguments in pages 15-20 of its brief—asserting "particularized facts" are needed in Plaintiffs' FAC—are meritless; indeed, they are frivolous. The Supreme Court and the Sixth Circuit have recently held ERISA prohibited transaction and breach-of-fiduciary-duty claims—like those in Plaintiffs' FAC—are not subject to Rule 9(b)'s heightened pleading standard. *See Cunningham*, 604 U.S. at 702; *Tiara Yachts*, 138 F.4th at 467-68. BCBSM asserting this argument without bringing to this Court's attention the Supreme Court and Sixth Circuit's recent rulings foreclosing its argument is sanctionable. *See Essroc Cement Corp. v. CPRIN, Inc.*, No. 1:08-CV-974, 2009 WL 2033052, at \*23 (W.D. Mich. July 9, 2009) (awarding sanctions against party under Fed. R. Civ. Pro. 11 and 28 U.S.C. § 1927 where it ignored decisional law and "the party fails to address binding precedent which squarely and conclusively precludes" its claims).

> **2.** **Plaintiffs' FAC sufficiently alleges BCBSM's self-dealing and fiduciary breaches.**

Plaintiffs' FAC alleges sufficient facts of prohibited transactions and fiduciary breaches under ERISA. Section 1106 of ERISA "prohibits fiduciaries from involving the plan and its assets in certain kinds of business deals." *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996).

*First*, it generally prohibits the "furnishing of goods, services, or facilities" between a plan and a "party in interest." 29 U.S.C. § 1106(a)(1)(C). A "Section 1106(a)(1)(C) [claim] contains three elements . . . [i]t prohibits fiduciaries from (1) 'caus[ing a] plan to engage in a transaction' (2) that the fiduciary 'knows or should know ... constitutes a direct or indirect ... furnishing of goods, services, or facilities' (3) 'between the plan and a party in interest.'" *Cunningham v. Cornell*

*Univ.*, 604 U.S. 693, 702 (2025) (quoting 29 U.S.C. § 1106(a)(1)(C)).[2] "Section 1106(a)(1)(C)'s bar is categorical: Any transaction that satisfies its three elements is presumptively unlawful." *Id.* Therefore, "under § 1106(a)(1)(C), plaintiffs need only plausibly allege each of those elements of a prohibited-transaction claim." *Id.*

*Second*, Section 1106 makes certain transactions between ERISA plans and fiduciaries or parties in interest *per se* self-dealing, such as "(1) deal[ing] with the assets of the plan in his own interest or for his own account"; or (2) "[providing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. § 1106(b). Section 1106(b) is an "absolute bar against self dealing." *Brock v. Hendershott*, 840 F.2d 339, 341 (6th Cir. 1988). "ERISA treats self-dealing transactions as presumptively unlawful, . . . no matter whether the plaintiff alleges the defendant acted out of fraud or imprudence." *Tiara Yachts*, 138 F.4th at 467 (citation and quotation marks omitted).

ERISA's prohibition on self-dealing by fiduciaries under Section 1106 means they are prohibited from setting their own fees and collecting them directly from plan assets.[3] *See Hi-Lex*,

---

[2] A "party in interest" is defined in § 1002(14) to include a fiduciary or service provider to a plan, like BCBSM.

[3] ERISA carves out some exemptions to these broad prohibitions, *see* 29 U.S.C. § 1108(b), but that "does not apply . . . to a fiduciary who engages in a prohibited transaction under 29 U.S.C. § 1106(b)(1) by paying itself from the assets of a welfare benefit plan." *Barboza*, 799 F.3d at 1269 (citing *Patelco Credit Union v. Sahni*, 262 F.3d 897 (9th Cir. 2001)); *see also Hi-Lex*, 751 F.3d at 751 ("We decline BCBSM's invitation to apply the reasonable compensation provisions found in §§ 1108(b)(2) and (c)(2) to the self-dealing restriction in § 1106(b)(1)"). Specifically, "while a plan may pay a fiduciary 'reasonable compensation for services rendered' under 29 U.S.C. § 1108, the fiduciary may not engage in self-dealing under 29 U.S.C. § 1106(b) by paying itself from plan funds." *Barboza*, 799 F.3d at 1269; *see also Hi-Lex*, 751 F.3d at 751 ("[W]hen a 'fiduciary uses a plan's funds for its own purposes, . . . such a fiduciary is liable under § 1104(a)(1) and § 1106(b)(1).'"). Where a fiduciary pays itself out of plan assets, it does not matter that the fees might be for "otherwise legitimate services"; they are still illegal. *Acosta v. City Nat'l Corp.*, 922 F.3d 880, 885-86 (9th Cir. 2019) ("Simply put, the holdings of *Patelco* and *Barboza* are not limited to fact patterns where the fiduciary received compensation for illegitimate services .").

16

751 F.3d at 750-51 (BCBSM engaged in self-dealing under ERISA when, as a fiduciary, it paid itself fees from plan assets); *Pipefitters Local 636 Ins. Fund v. BCBSM*, 722 F.3d 861, 868 (6th Cir. 2013) (discretionary fees charged "for its own account" to pay "its independent Medigap obligation to the State of Michigan" was "exactly the sort of self-dealing that ERISA prohibits fiduciaries from engaging in"); *Barboza v. California Asso'n of Professional Firefighters*, 799 F.3d 1257, 1269 (9th Cir. 2015) (fiduciary's "practice of paying its own fees and expenses from the Plan's assets held in the Wells Fargo account" was self-dealing).

BCBSM is an ERISA fiduciary, and it collected SSP fees in its discretion from the Plan's assets. FAC, ¶¶1-12, 51-139 (ECF No. 23, PageID.250-252, 259-282); *Tiara Yachts*, 138 F.4th at 466-70. As the Sixth Circuit described:

> BCBSM received both 30% of future overpayments the SSP prevented the Plan from paying, and 30% of past overpayments the SSP clawed back from providers. And, critically, BCBSM controlled the number and amount of overpayments the Plan made because under the ASC, BCBSM decided which claims to pay, determined how much to pay for them, and then wrote the checks. In short, BCBSM's control over the claims-processing apparatus meant it also exercised discretion in setting its compensation under the SSP. Here, Tiara Yachts alleges that the self-dealing was nefarious: BCBSM intentionally inflated the pool of overpayments from which it could profit. The more overpayments BCBSM made on the front-end while processing claims, the more money it could receive on the back-end through the SSP.

*Tiara Yachts*, 138 F.4th at 468.

BCBSM's collection of SSP fees from Plan assets is a *per se* violation of the prohibition against self-dealing under 29 U.S.C. § 1106(b) and a party-in-interest transaction under 29 U.S.C. § 1106(a)(1)(C) because—as the Sixth Circuit has held—BCBSM was a fiduciary dealing with the assets of the Plan for its own account. *See id.* Plaintiffs have therefore plausibly alleged BCBSM engaged in prohibited transactions under 29 U.S.C. § 1106(a)(1)(C) and 1106(b). *See*

17

*id.*; *Hi-Lex*, 751 F.3d at 751; *Pipefitters*, 722 F.3d at 868; *Patelco*, 262 F.3d at 911; *Barboza*, 799 F.3d at 1269; *Acosta*, 922 F.3d at 885-86.

And BCBSM's liability for engaging in prohibited transactions under Section 1106(b) by self-dealing through SSP fees is determinative of its liability for breaching its fiduciary duties under Section 1104(a)(1). *See Hi-Lex*, 751 F.3d at 751 ("[W]hen a 'fiduciary uses a plan's funds for its own purposes, . . . such a fiduciary is liable under § 1104(a)(1) *and* § 1106(b)(1))'" (quoting *Pipefitters*, 722 F.3d at 867-69) (emphasis added); *see also Pipefitters*, 722 F.3d at 867-69 ("Though ERISA's duties of loyalty and care are undeniably broader than the prohibition against self-dealing, acting with the care, skill, prudence, and diligence with an eye single to the interests of the participants and beneficiaries, . . . necessarily requires that an ERISA fiduciary not use plan assets for its own purposes.").

BCBSM faults Plaintiffs for supposedly not "tying [its] alleged errors to the Wesco, Bavarian Inn, or Opus Plans and then to SSP recoveries or payments with respect to the Plans." But the FAC alleges BCBSM charged and collected SSP fees from the Wesco, Bavarian Inn, and Opus Plans, FAC, at ¶¶129-130, 141-145 (ECF No. 23, PageID.278, 282), which BCBSM cannot dispute. And Plaintiffs have no obligation to plead claim-level detail on those charges; it "need do no more than plead a violation of § 1106(a)(1)(C)[.]" *Cunningham*, 604 U.S. at 700. The FAC alleges numerous paragraphs describing specific violations of § 1106(a)(1)(C) and 1106(b) relative to the Plans, despite BCBSM's "tak[ing] active steps to conceal its collection of SSP fees under the Class Representatives' . . . Plans[.]" FAC, ¶¶129-130, 139-145 (ECF No. 23, PageID.278, 281-282).

Further, in a recent published ruling against BCBSM in an ERISA case based on BCBSM's SSP fees, the Sixth Circuit ruled BCBSM's SSP fees—which it noted are calculated off

"consistently . . . improper payments of claims,"—plausibly violate Section 1106. *Tiara Yachts*, 138 F.4th at 462, 468 ("Tiara Yachts has plausibly alleged BCBSM exercised discretion as to its own compensation through the SSP, giving rise to fiduciary duties. "). Like in *Tiara Yachts*, here "[t]he crux of the complaint is that BCBSM breached its fiduciary duties to the Plan by squandering assets, then wrongfully kept a portion of overpaid Plan assets as administrative fees." *Id.* at 471. Just as in *Tiara Yachts*, here Plaintiffs "also allege that BCBSM . . . violated ERISA's strictures on self-dealing by using the SSP to profit off its own mismanagement of Plan assets." *Id.* at 462. Given the Sixth Circuit has ruled "Tiara Yachts' complaint has plausibly alleged facts suggesting that it can seek to recover for restitution or disgorgement of BCBSM's SSP profits under § 1132(a)(3)," *id.* at 472, BCBSM's argument that Plaintiffs' same SSP claims in this ERISA case are implausible is meritless; indeed, frivolous. *See id.*

Just like *Tiara Yachts*, Plaintiffs have alleged: (1) BCBSM's claims processing system regularly pays claims with errors, including on behalf of Plaintiffs' Plans (FAC, at ¶93-107 (PageID.270-273)); (2) BCBSM knowingly allows such errors to increase its pool for recovery under the SSP (*id.* at ¶104-122 (PageID.273-276)); (3) all self-funded plans, including Plaintiffs' Plans, experience these improper payments (*id.* at ¶93-107 (PageID.270-273)); and (4) BCBSM unilaterally enrolled all self-funded customers into the SSP in which BCBSM set its own compensation and collected it from Plan assets. FAC, at ¶¶108-109, 165-182 (PageID.273-274; 288-94). That is sufficient to plead a claim for prohibited transactions under ERISA; "no more, no less" is required. *Cunningham*, 604 U.S. at 700 ("The Court concludes that plaintiffs need do no more than plead a violation of § 1106(a)(1)(C), and we therefore reverse."); *see also id.* at 710 (Alito, J., concurring) ("The upshot is that all that a plaintiff must do in order to file a complaint that will get by a motion to dismiss . . . is to allege that the administrator" "employ[ed] outside

19

firms to provide services[.]").  The Sixth Circuit decided this already too.  *See Tiara Yachts*, 138

F.4th at 468-472.  If more was needed, this Court in *Tiara Yachts* recently denied BCBSM's second

motion to dismiss on remand that again made the same arguments it asserts here.[4]  *See* **Ex. A**,

8/12/2025 Order; **Ex. B**, Transcript, at 11:18-14:3.

**D.      WESCO'S ERISA CLAIMS, BROUGHT ON BEHALF OF ITS PLAN AND BELONGING TO ITS PLAN, HAVE NOT BEEN RELEASED.**

BCBSM's argument that Wesco's claims have been released is likewise meritless.[5]  "In

accord with ERISA's purposes" and consistent with the multiple "circuits' approaches . . . when a

breach of fiduciary duties is alleged, courts must evaluate releases and waivers of ERISA claims

with special scrutiny designed to prevent potential employer or fiduciary abuse."  *Schuman v.*

*Microchip Technology Incorporated*, 139 F.4th 1045, 1052 (9th Cir. 2025) (internal citation and

quotation marks omitted)).  Here, applying even a modicum of this "special scrutiny" to BCBSM's

arguments makes clear Wesco's claims have not been released, for numerous, independent reasons.

*First*, Wesco never agreed to any release and there was no consideration for any release.

Wesco and the Plan never received "final payment" from BCBSM; as set forth in the FAC, they

are still owed at least tens of thousands of dollars by BCBSM.  FAC, at ¶¶ 140-141, 144-146, &

---

[4] BCBSM also admits it makes "processing errors, apart from the SSP"; *i.e.*, claims processing errors that are not funneled through its SSP (ECF No. 40, PageID.39).  Thus, BCBSM regularly squanders plan assets by overpaying claims.  But here, the gravamen of the FAC is that BCBSM engages in prohibited transactions by assessing SSP fees that it collects from plan assets for overpayments it recoups or avoids.  As discussed above, such fees are unlawful under ERISA whether there were overpayments or not, and whether any overpayment was recouped or avoided.  BCBSM paying itself from plan assets in amounts that are within its discretion is *per se* unlawful.  That is what Plaintiffs' FAC targets, not BCBSM's processing errors that are independent of its SSP violations.

[5] Importantly, BCBSM's release argument is only directed to Wesco, and thus, even if Wesco's claims were released (they were not), that does not affect the claims of Bavarian Inn, Opus, or the putative class.

Prayer for Judgment at e-g (ECF No. 23, PageID.282-283, 295-296); **Exhibit C**, Kopp Decl., at ¶¶8-9. BCBSM's so-called "refund" was not, and does not even purport to be, a "final payment." (ECF No. 31-12, PageID.751). Therefore, no release could be operative; the Plan has not been made whole and Wesco never knowingly and voluntarily agreed to any release. *See Schuman*, 139 F.4th at 1053-54 (enforceability of an ERISA release "require[s] consideration of any improper conduct by the fiduciary" which "warrants serious consideration and may weigh particularly heavily against finding that the release was 'knowing' or 'voluntary' or both."). Further, Wesco was already entitled to the funds in BCBSM's "refund," and it could therefore not serve as consideration for any release. *See Fleming v. U.S. Postal Serv. AMF O'Hare*, 27 F.3d 259, 261 (7th Cir. 1994) (where "all the plaintiff obtained in exchange for the release was something to which he was already entitled . . . the release would fail for want of consideration[.]").

*Second*, Wesco's future, derivative ERISA claims were not released upon Wesco's signing the ASC in 2003 because the language BCBSM relies on neither mentions Wesco's *Plan*, the SSP, or *ERISA* claims. Courts "will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.' More succinctly, the waiver must be clear and unmistakable." *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983). Here, the language BCBSM relies on for its "release" relates to contractual claims only (ECF No. 31-3, PageID.646) ("claims that are [for] . . . other sums of money due and owing between the parties ***and arising under this Contract.***" (emphasis added)). It does not mention ERISA claims. *See id.* Wesco's derivative claims, brought on its Plan's behalf, are statutory claims arising under ERISA (ECF No. 23, PageID.250, 288–294).[6] They are therefore not encompassed

---

[6] BCBSM relies on *Taylor v. Visteon Corp.*, 149 F. App'x 422, 423, 425-27 (6th Cir. 2005), for support, but the release language in that case is materially different than the language it relies on here. In *Taylor*, the release language encompassed "any and all rights or claims of any kind,"

by the contractual provision BCBSM relies on.  *See Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 685 (6th Cir. 2013) ("The Class's future pension claims were not released as a matter of law because the whipsaw claims had not accrued at the time of the execution of the Severance Agreements and because the scope of the contracts did not relate to future ERISA claims.").

*Third*, Plaintiffs ERISA claims, which accrued in 2025, could not possibly be released by BCBSM's contractual provision signed in 2003 because *future* ERISA claims cannot be released as a matter of law.  BCBSM asserts the "release" was agreed to in 2003 and covers *future* claims that arose at some point thereafter.  BCBSM Br., at 4, 12, 22 (ECF No. 40, PageID.22, 30, 40).  However, *future* ERISA claims—like those BCBSM asserts were supposedly released here—cannot be released as a matter of law through general releases.  *See Schumacher*, 711 F.3d at 685 (collecting cases holding plaintiffs cannot release future ERISA claims); *Sweeney v. Nationwide Mut. Ins. Co.*, No. 2:20-CV-1569, 2024 WL 1340262, at *5 (S.D. Ohio Mar. 28, 2024) ("First, the release does not purport to (and indeed cannot) limit Mr. Marshall's recovery for fiduciary breaches occurring after May 6, 2019."); *Shirk v. Fifth Third Bancorp*, No. 05-CV-049, 2008 WL 4425535, at *3 (S.D. Ohio Sept. 30, 2008) ("[T]he release Jauss signed in 1998 cannot as a matter of law be a release of future claims under ERISA."); *see also* 29 Williston on Contracts § 73:10 (4th ed.) ("[A] general release will not be construed to bar the enforcement of a claim that had not accrued as of the date of the release.").

---

*i.e.*, any possible claim. *Id.* at 425.  In contrast, here, the contractual language BCBSM relies on only covers "claims that are [for] . . . other sums of money due and owing between the parties and **arising under this Contract.**" (ECF No. 31-3, PageID.646) (emphasis added).  Wesco's derivative claims, brought on its Plan's behalf, are statutory claims arising under ERISA, not contractual claims arising under the Contract (ECF No. 23, PageID.250, 288–294).  They are therefore not encompassed by the contractual language BCBSM relies on.

*Fourth*, even if a "release" existed, it is not enforceable against Wesco's derivative ERISA claims under § 502(a)(2) because those claims belong to the Plan, not Wesco individually. Any *individual* "release" by Wesco in the ASC on its own behalf cannot release derivative claims that belong to the Plan, which did not sign the ASC and is not even mentioned in the language BCBSM relies on (ECF No. 31-3, PageID.646). Importantly, "Wesco brings this action on behalf of the Wesco Plan and in its capacity as the Wesco Plan sponsor under Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2)." FAC, at ¶18 (ECF No. 23, PageID.253). Wesco seeks Plan-wide relief for its Plan. *Id.* at 47-48 (PageID.295-296). The Sixth Circuit has held "[t]he weight of authority and the nature of § 502(a)(2) claims suggest that these claims belong to the plan, not to individual plaintiffs." *Hawkins v. Cintas*, 32 F.4th 625, 627 (6th Cir. 2022). It relied on cases holding an individual plaintiff cannot release claims belonging to an ERISA plan. *Id.* at 636 (citing cases). Here, "*Hawkins* is controlling," and Wesco "did not have the power to individually waive claims owned by the Plan[.]" *Arnold v. Paredes*, 714 F. Supp. 3d 962, 973-974 (M.D. Tenn. 2024) (holding plaintiffs' individual releases not enforceable against derivative ERISA claims (citing *Hawkins*, 32 F.4th at 627)).

*Fifth*, ERISA's exculpatory provision, ERISA 410(a), 29 U.S.C. § 1110(a), bars BCBSM's "release" argument. Under that provision, "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a). The Sixth Circuit has held that releases —like BCBSM's "release"—of *future* ERISA claims for breach of fiduciary duty are unlawful under Section 410(a).[7] *See Rosenbaum v. Davis Iron Works*, 871 F.2d 1088,

---

[7] By contrast, the dicta BCBSM cites from *Taylor v. Visteon Corp.*, 149 F. App'x 422, 427 (6th Cir. 2005), only applied to "past breach-of-fiduciary-duty claims" that had arisen at the time of the waiver, not to future claims like those here.

1989 WL 36897, at *5 (6th Cir. 1989) (plaintiff's purported future "waiver of claims that the administrators of a plan violated their fiduciary duty to the plan . . . involves exactly the type of case § 1110 was meant to apply to, a waiver of claims of breach of fiduciary duty. The prohibition should apply.").

*Sixth*, any "release"—even if it existed and was enforceable—would violate public policy and run afoul of the "effective vindication" doctrine. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985). Under that doctrine, a "prospective waiver of a party's right to pursue statutory remedies" will not be upheld. *Id.* at 637 n.19. Here, BCBSM seeks to have this Court deem into existence and enforce a purported *future* "release" that would bar the Wesco Plan from enforcing its substantive, federally-protected rights and claims under ERISA against BCBSM. That is barred by the "effective vindication" doctrine. *See Parker v. Tenneco, Inc.*, 114 F.4th 786, 798-802 (6th Cir. 2024) (contractual provision barring representative capacity claims under ERISA and restricting monetary relief available to ERISA class-action plaintiff "unenforceable as a prospective waiver of these statutory rights"); *Fleming v. Kellogg Co.*, No. 23-1966, 2024 WL 4534677, at *8 (6th Cir. Oct. 21, 2024) (same).

## IV.     CONCLUSION

BCBSM's motion fails at every turn. Its limitations defense ignores that each SSP fee extracted from Plan assets is an independent ERISA violation triggering a fresh statute of limitations—self-dealing that continues to this day. Its "actual knowledge" argument is refuted by the FAC's allegations that Plaintiffs did not discover the self-dealing until 2025, precisely because BCBSM misrepresented and concealed it. Its merits arguments disregard the Sixth Circuit's decision in *Tiara Yachts*, which sustained virtually identical claims against BCBSM, and the Supreme Court's holding in *Cunningham*, which rejected the very heightened pleading standard

BCBSM urges here.  And its release defense is built on a provision that does not mention ERISA, purports to bind a Plan that never agreed to it, and is void under ERISA's exculpatory provision, § 1110(a), and the effective vindication doctrine.

BCBSM asks this Court to resolve contested facts at the motion-to-dismiss stage based on cherry-picked language from its own exhibits outside the pleadings, ignore binding precedent, and enforce a "release" that does not exist in any legally cognizable form.  The Court should deny BCBSM's motion in its entirety.

<div align="center" style="float:right">

Respectfully submitted,

**VARNUM LLP**
*Attorneys for Plaintiffs*

</div>

Dated: April 23, 2026

By: */s/ Herman D. Hofman*
Perrin Rynders (P38221)
Aaron M. Phelps (P64790)
Herman D. Hofman (P81297)
Bridgewater Place, P.O. Box 352
Grand Rapids, MI 49501-0352
(616) 336-6000
prynders@varnumlaw.com
amphelps@varnumlaw.com
hdhofman@varnumlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 23, 2026, I electronically filed this document with the Clerk of the

Court using the ECF system, which will send notification of the filing to all ECF filing participants.

By: *<u>/s/ Herman D. Hofman</u>*